Contracts; administrative findings; increased costs; hearsay evidence; total cost theory.; jury verdict; time extensions; access. road; pile driving; concrete .placement.-^ Plaintiff, joint venturers, entered into a fixed-price contract *743 for construction of Lock No. 2 and bridge and approaches on the Arkansas Eiver and its tributaries in the vicinity of Tichnor, Arkansas, as part of the Arkansas Eiver Navigation Project involving construction of numerous locks and dams on the Arkansas Eiver and tributaries in Arkansas and Oklahoma to allow control of river flow. By the time plaintiff’s contract was awarded on September 8, 1964 the project has progressed to the point where the canal between Locks 1 and 2 was excavated and an embankment constructed along the north side. The Critical Path Method of contractor scheduling and performance analysis was utilized in administration of the contract. The principal feature of the contract was construction of a lock chamber; the nature of the silts, sands and clays in the deposits in the lower Arkansas Eiver Valley required the lock chamber to be supported by foundation piling to insure stability and to minimize settlements. Prospective bidders were furnished with copies of a report on pile driving and loading tests. Plaintiff encountered access road difficulties; the contracting officer issued a change directive to provide for construction of a gravel-surfaced haul road; the Eng. BCA found that the alternate road was an adequate substitute for the access road and that the lack of a paved access road did not delay plaintiff or cause added delivery expense which would not have been incurred in. any event. Plaintiff also encountered pile driving difficulties; the Board found that plaintiff’s initial pile driving difficulties stemmed from equipment failures and from use of inexperienced personnel, and that the pile driving difficulties were not due to inherent site conditions that necessitated a complete revision of the pile driving specifications. The major part of plaintiff’s claim involved the effect of changes on its planned placement of concrete in the lock, plaintiff asserting that it thereby became necessary to change the entire sequence of concrete placement. During contract administration- the contracting officer authorized 31 modifications that authorized equitable price adjustments, exclusive of the three in dispute in the present proceeding. Plaintiff seeks Wunderlich Act review of the Board’s disposition, of each of the claims involved. Trial Judge Harkins in a recommended decision filed January 17, 1973 (reported in full at 18 COF para. *744 81967) concludes, for the reasons set forth therein and'upon the law and evidence in the administrative record, that plaintiff’s motion for summary judgment should be denied and the petition dismissed. (1) Plaintiff asserts that the Board’s decision is defective in that the findings are summary and conclusionry in nature and interweave legal conclusions with factual findings in such a way that they cannot be separated. Trial Judge Harkins indicates that there is no requirement that the Board’s findings of fact be separately numbered or labeled as “findings,” and that the technique of presenting factual conclusions in the text of an opinion is in aid of orderly presentation and contravenes no rule of law. He concludes that a review of the entire administrative record makes it manifest that the Board’s findings of fact are supported by substantial evidence, and the fact that there may ‘be subsidiary findings not made by the Board, but implicit in the administrative record, is not fatal to the Board’s ultimate determination. (2) Plaintiff contends, respecting its pile driving plan, that the Board member during the hearing erroneously excluded evidence [on the grounds of hearsay and materiality]. Trial Judge Harkins concluded that even if the Board member erred in excluding the proffered evidence, such exclusion did not prejudice plaintiff since there is substantial evidence in the administrative record to. support the Board’s finding that the plan was “overly optimistic.” (3) Plaintiff’s claims on the pile driving change and for increased costs for concrete placement were on a “total cost” basis, which the Board rejected. In affirming the Board’s rejection, Tidal Judge Harkins points out that recovery on the basis of total expenditures less contract receipts is only appropriate where there are proper safeguards and there is no other alternative to compute reasonable damages when the Government’s responsibility for damages is clearly established. (4) The Board applied the “jury verdict” technique to determine the equitable adjustments due with respect to two modifications and to resolve the question of prime contractor markup for overhead and profit respecting another modification; the Board resorted to this technique because the accuracy of plaintiff’s accounting presentation was unreliable, and the validity of the theories underlying the Government’s *745 various estimates were not convincing. Trial Judge Harkins concluded that on tbe basis of a record showing liability for a change and resulting additional costs in time and money, but no precise measure of accountability, the Board’s determination of an equitable adjustment by means of a jury verdict is not error. (5) Plaintiff’s differences with the Board on allowable time extensions embody a concept that the various items of work in the contract can be separated into unrelated events, but its demands for increased time do not give regard to the interrelationships of the work sequences. The Board viewed contract performance as a totality with impact of changes in the various work items considered in their overall effect. Trial Judge Harkins concluded that plaintiff’s concept of the severability of work items results in an exaggerated total claim for time extensions, that the foundations of the Board’s concept are findings of fact that are supported by substantial evidence on the record, and that in the light of the testimony and documentary evidence the Board’s resolution of its inability to prorate the delay periods to the critical path cannot be said to be unreasonable. (6) Trial Judge Harkins concluded that availability on December 1, 1964 of the north embankment road for access to the site was not an unequivocal representation or warranty in the subject contract, and that the Board’s findings that the lack of the paved access road did not delay plaintiff or cause added delivery expense which would not have been incurred otherwise are supported by substantial evidence and are affirmed. This case came before the court on plaintiff’s request for review by the court of the recommended decision, having been submitted on the briefs and oral argument of counsel. Upon consideration thereof, since the court agrees with the recommended decision, the court on February 1,1974 affirmed and adopted the decision as the basis for its judgment in this case, denied plaintiff’s motion for summary judgment and granted defendant’s cross-motion to the extent that plaintiff’s petition is dismissed, granted plaintiff’s motion to dismiss defendant’s counterclaims and denied defendant’s cross-motion to the extent that the latter’s first, second, third, fourth and fifth affirmative defenses and counter-claims are dismissed.